on the docket is State Farm Mutual Auto Insurance Company v. Elmore, No. 518-0038. Are the attorneys ready? Yes, sir. Okay, you may proceed. Good morning. Good morning. My name is Kara Wade. I'm here on behalf of the defendant, Kent Elmore, in this matter. May it please the court and counsel. This case arises from a summary judgment order that was entered in State Farm's favor relating to an auto insurance policy issued by State Farm to their insurer, Sheldon Elmore. The court determined that there was no coverage for the incident that resulted in the amputation of our client's leg, Kent Elmore's leg, when he was using the grain truck that was insured under the policy and owned by Mr. Sheldon Elmore. In granting State Farm's summary judgment motion, the trial court found that the mechanical device exclusion contained in the policy barred coverage for the injury. So the sole issue here today is whether the mechanical device exclusion applies to our client's use of the insured grain truck. The facts are undisputed. Our client was assisting his father, Sheldon, in completing the harvest in fall of 2013. This assistance included helping his dad get the grain out of the field to eventually the elevator. And in doing this, they would dump the grain into a grain truck and then they'd have to take the grain out of the grain truck and transport it into a transport truck that would eventually haul the grain to an elevator. While he did this, they had to use an auger to transport the grain, the corn, from the grain truck to the transport truck. Now, this particular auger at issue could not operate under its own power. It had to be hooked up to a tractor through a PTO shaft that would make the auger run. So as our client was going to move the grain from the grain truck to be transported, his leg got caught in the auger as the shield and protective shield for this particular auger had been removed. And he went to go open the back of the grain truck and put pressure on the, you know, you're trying to get leverage, and he got caught in the auger and amputated his leg. State Farm is not contesting here that the grain truck was in use by our client at the time of his injury or that the incident, or that there was a causal connection between his use of the truck and his injury. In fact, the council made it during oral argument for summary judgment that there would be cover for his injuries if not for this particular exclusion. As a permissive user of the truck, Mr. Elmore was considered insured as that term was defined under the liability coverage of this policy at issue. So, I mean, really, it turns on this mechanical device exclusion, so let's look at the terms of that. This particular exclusion was found in an endorsement to the policy, and it's found in the third section. There's three actual provisions of it. It's found in the third section, but it says, C, there's no coverage when insured for damages resulting from the movement of property by means of a mechanical device other than a hand truck that is not attached to the vehicle described in A above. We believe, Your Honor, that this exclusion is not five-year because it, first of all, it's ambiguous, which I'll get into, and also it's against public policy. Ms. Wade, does ambiguity in a contract equate with inability to specifically define? No, Your Honor, it doesn't. It's given the planetary meaning as that's defined by a dictionary, for instance. I get into that when I read. But in your dictionary you define, in relating to the dictionary, both parties use the dictionary, obviously. Yes, Your Honor. You interpret the dictionary differently, right? I think that's correct, Your Honor. So when you break down, getting into the definition, when you break down mechanical device, mechanical as defined as all relating to machinery are produced or operated by a machine or tool. And a machine is defined, again, this is from the Merriam-Webster dictionary, a machine is defined as a mechanically, electrically operating device for performing a task. Now, the trial court found that the operating issue was clearly a mechanical device. Well, when you, why do you define machine? Because when you look at the definition of mechanical, Your Honor, it says of or relating to machinery. Okay. They're produced or operated by a machine or tool. And then you go to machine and you have that same relating to. So if, hypothetically, an auger is a machine, are you claiming that the fact that it doesn't have power somehow makes this ambiguous? Yes, Your Honor, essentially. When I think of a machine, I think of something that can operate on its own. It has an engine, for instance. It can operate without the assistance of something else. And an auger just sitting in a field. It's like a tool. A power train, a PTO device. Correct. It's just sitting there. Essentially, it's like a tool. It's like a wrench. It can't go on its own unless it's hooked to something else. And that definition, that interpretation of a machine is certainly an alternative and certainly a possibility. And it's actually also, I would say, supported by the other exclusion contained in the language at issue. It also specifically excludes a hand truck from the definition of a mechanical device. And similar to an auger, a hand truck, it's kind of like a wheelbarrow. It's like a dolly. A hand truck would require a human engine. Correct. But it's still an independent source. What else in their other exclusion could you relate to needing a motor? Well, I can't think of anything specifically described. There's nothing specifically described, Your Honor. But some of the other cases, which again, I'll get into this in a minute, but there's no Illinois cases. But the foreign cases that we found, most of it was like they were using a crane or they were using some type of heavy equipment that ran on an engine whenever they were transporting something onto a trailer or truck or whatever was insured. I think it's very similar to a hand truck because, like I said, a hand truck in and of itself can go. An auger, this auger in and of itself could not go on its own. Well, do you think that this is a decision that should be decided as a matter of law or do you think a jury should decide or a fact finder should decide whether an auger is a tool or not? Well, Your Honor, I think it is a legal question because we're looking at the interpretation of the policy here, the interpretation of a contract. So yes, I mean, it clearly is an issue of law that this Court can decide to no vote. So again, because there is more than one potential interpretation of what a mechanical device is, this creates an ambiguity that... Could you read me again what you read from your dictionary definition of machinery? Yes, Your Honor. So it's defining mechanical. Mechanical is defined as auger relating to machinery produced or operated by a machine or tool. Or produced. That second sentence again. Produced or operated by a machine or tool. Produced or operated by. Correct. So you're saying the auger would not be operated by a machine or tool? No, I guess I'm looking at the definition of what a machine is and I'm asking, a machine is a mechanically, electrically or electronically operated device. And when I look at that, I see, okay, well, there's an auger who can't operate on its own power. Is it considered a mechanically, electrically or electronically operated device? I don't know the answer to that question. I think that creates a vagueness that leaves open more than one possibility for interpretation. And because that exists, it should be construed  There's a lot of arm implements that don't operate on their own by themselves. Like brush hogs and attachments that do operate off of PTO. Correct, but I don't think those would necessarily be used to transport something on to an insured vehicle or away from an insured vehicle, Your Honor. So let's focus on the transport issue that arose now just as a result of Justice Chapman's questions. This is different in your mind than a brush hog? Correct, Your Honor, because a brush hog, you're using it to, I think, I'm a farm kid, but I'm trying to remember, you're using it to mow something down or collect something. No, this mechanical device only is, this exclusion only applies if the mechanical device is used to transport something on to or away from, or I should say on to an insured vehicle. I'll get into that issue in a second. But it's only if it's used as part of some kind of loading or unloading process. So the exclusion is related to something that's used to transport? It's used in the assistance of loading. And do they give an example of a wheelbarrow? It specifically says, Your Honor, the movement of property by means of a mechanical device other than a hand truck. But I'm trying to think of things that you attach to like tractors or larger farm implements that have like front loaders and things that you can take off and put another implement on. Correct. Are you saying that those aren't mechanical? Well, you just said that it's attached to the tractor, so I would say that becomes part of the equipment, whatever heavy piece of equipment you're using to move whatever item you're moving. But a brush truck wouldn't move things. Correct, that's why I said I don't think that's really included. Like a bucket would, something like that. But that bucket would be attached to a tractor or a crane. It's better than just an auger just sitting there. But not always. I mean, you can actually remove, you can put forks on. We actually, I'm a farm kid, too. You know, you can put a front loader on some tractors or forks or tines. Well, I would say that's an attachment to that particular machine. But the machine there would be the tractor. Yes. It wouldn't be just the tool. That tool by itself isn't doing anything. Right. And so that's kind of like the auger. It's just sitting there not doing anything unless it's attached to something to make it go. And this was an auto policy. This wasn't a farm implement policy. Correct, Your Honor. So can we deduce anything from the fact that this was an automobile policy, what the intent of auto policies were as opposed to being a farm implement policy, for example, where they're trying to make an exclusion? Well, Your Honor, I'll get into that when we talk about the public policy portion of this. Well, let me just jump to that. So permissive users under the insurance code are required to be insured under the omnibus clause is what it's called. The omnibus clause? Yes, Yes, Your Honor. And so this is an auto insurance policy, and the insurance code actually requires that I can actually quote to you the language from that particular statute, Your Honor. I'll get back to it. It is section 7-317B2 of the vehicle code, and it provides that a motor vehicle liability policy shall insure the person named therein and any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured. So here. That's motor vehicles. Correct. And there's no dispute that this green truck is considered a motor vehicle for purposes of this policy. So he was allowed to use the truck. Correct. There's no dispute that he was a permissive user of a vehicle that was insured under this policy, Your Honor. Okay, but we still have to get to the issue of the exclusion as it relates to the truck. Is that right? Well, Your Honor, they focus, we all focus, Your Honor, the parties focus the exclusion on the use of the auger. It was not the truck but the auger. But it is related to an insured truck. Correct. So we were transporting grain from an insured truck out, and as part of the complete operations doctrine, that's all included as part of what should be covered under the auto insurance policy. So going back to the interpretation of the – Let me get to the complete operations doctrine. The complete operations doctrine in conjunction with the permissive use statute requires that the entire operation be insured. Correct, Your Honor. What does that mean, the entire operation be insured? Well, I believe it's been attributed that it's until whatever is being delivered is actually completed and is out of the possession of the insured. So arguably here, it would be until that grain got to the elevator. But that's not really in dispute. That's not part of the exclusion. Yeah, that's not in dispute here. The point is here in questioning is if you exclude the auger, are you putting a hole in the complete operation? In other words, do you need the auger to deliver? The way the auger was being used, do you need the auger to deliver the grain? In this particular scenario, yes. You couldn't transport the grain from the insured grain truck to the transport truck without the use of the auger. So if we exclude the auger, we are putting a hole in the complete operation? That's what you're telling me. I mean, you may have been able to use some other device to transport it, but in this particular scenario, yes, the auger was necessary to complete the delivery of the grain out of the insured grain truck. So there goes your public policy argument. You can't exclude the auger. So that is your public policy, I'm assuming. Well, actually, the public policy argument relates to, yes, they're excluding a permissive user of the truck here by doing this. Now, State Farmers focused on the progressive case, which the holding in the progressive case was that exclusion to a policy will not be voted against public policy under the Omnibus Clause if there's not disparate treatment between the insured and the permissive user of the insured vehicle for purposes of coverage. And there are in here that because the mechanical device exclusion applies equally to insureds, well, it applies to insureds, which includes permissive users as the term is defined in the liability coverage at issue. So they're saying because insureds are equally excluded, that there should be no coverage and it doesn't run afoul of any public policy requirements except the Omnibus Clause. However, if you view the policy as a whole, you see it's pretty reasonable to conclude that the actual goal of this exclusion, mechanical device exclusion, is to solely prevent coverage for permissive users. And that's because the general exclusion is going to contain the liability coverage, already exclude coverage for all bodily injury to any main insured, a resident relevance of the insured, and it goes on and so forth. It talks about who has to find. So they're already excluded from coverage. There's no liability coverage for any injury sustained by a main insured. So it's already gone. So when you take that in conjunction with the mechanical device exclusion, really the only party that's added there are permissive users because there's no coverage for injuries to main insureds. And really the only people who would be injured as part of the loading process would be permissive users because those would be the only ones, besides the main insured, who would be assisting in loading whatever item it is. So that's why I think that this policy, even though it names insured, is really targeting permissive users, and that runs afoul of the reasoning in Progressive and also the Smith case, State Farm Modern Mutual Insurance Company versus Smith. In that case, the Supreme Court held that the Illinois legislature had decided that the public policy of Illinois requires an insurance company that issues a liability insurance policy, a motor vehicle policy to an insured, must cover the insured, and any person who has received the insured expressed or implied permission to use the vehicle. So consistent with that and the whole thing in Progressive, here the intent is that the permissive users don't get coverage when they're helping loading. And going back to interpretation, there's two possible ambiguities with respect to the mechanical device exclusion. The one we discussed potentially more than one definition or interpretation for the definition of mechanical device, but also that particular provision references the vehicle described in A above. And if you look at subsection A of that same exclusion, it's contemplating, it says there's no coverage for the handling of property before it is moved from the place where it is accepted by the insured for movement into or onto a vehicle to which the insured is provided liability coverage by this policy. So it's clearly contemplating the loading of the vehicle. It's referring to that vehicle in A. So if you read those in conjunction, you could, a reasonable interpretation, you could conclude that it's talking about using the mechanical device when you're loading, not necessarily unloading. But if that's true, let's take that hypothetical or assumption, I'm sorry. If that's true, then they're still excluding a piece of the complete operation doctrine. That's our public policy argument, Your Honor. Yeah, I know. Because this argument about the complete operation, it's kind of unique in the law, isn't it? I realize you're young. Well, yeah, you know, it was part of the summary judgment motion. We argued the completed operations doctrine, and it just wasn't an issue. The judge ruled that this would have been covered except for this exclusion because it was part of the completed operations of delivering the grain. So it's just not, but I guess, I'm sorry, I can't say it more about it because it just wasn't disputed. The issue was only if this exclusion applies. Well, I mean, the real reason we're here is if, let's, for example, if the named insured under the law can be excluded, right, we have a case and a statute that says permissive users cannot be excluded. Correct, Your Honor. I would agree with that. State Farm's going to point to the aggressive case that specifically states, well, if the exclusion is applicable to both the insured and the permissive user, then it goes. And then it's fine. It's not a violation of public policy. And our argument is, well, no, really this is kind of cloaked to just really exclude injuries for permissive users because injuries for named insureds were already excluded by the policy. Thank you. Thank you. Thank you. Thank you. May it please the Court. My name is Mike Badesky, and I'm representing State Farm. I took a little bit of flack in the briefing, and I was criticized a little bit in the briefing, for mentioning the settlement in the underlying case. It is directly relevant, however. Why? It's relevant because for three reasons, Judge. The first reason is it shows, as this Court mentioned, the purpose of the insurance here is an auto policy. How does that relate to settlement? I didn't get that either. Okay. One of the first things that the Illinois Supreme Court says when interpreting an insurance policy is to determine what is the purpose of the policy. Is it an auto policy? Is it a CGL? Is it a farm liability policy? What type of policy is it? That's sort of the overarching theme when a court interprets an insurance policy. But, Mr. Badesky, is it true that you conceded, State Farm is you, I'm sorry, that State Farm conceded that there's coverage if this is determined to be an invalid exclusion? There's coverage. Yeah, that's right. Absolutely.  There's coverage. Aren't we limited to now looking at the two arguments of, I mean, if you have to pay, if State Farm has to pay, then the issue of set-off or how this case was settled arises, right? Well, no. When we made an agreement, we resolved how much coverage there is. Okay. So why is all that, why did that take up our time? I just didn't understand it either. Because it all is part of the gloss when the court interprets this mechanical device exclusion. For example, Your Honor, like I tried to mention earlier in the brief that this is a duty-to-indemnify case, not a duty-to-defend case. Separate, independent duties. If it's a duty-to-defend, the cases say, well, if there's a mere potential of coverage, all doubts and ambiguities are construed in favor of the insured. But if it's a duty-to-indemnify case, the issue is whether there's actual coverage under the policy. And those duty-to-defend cases, the courts really bend over backward to try to find coverage. But the procedural situation that we're in does have significance, absolutely, I believe, in interpreting the clause at issue, the exclusionary clause at issue, because there's some cases cited by the opposition that, frankly, they're duty-to-defend cases about how should you interpret the language here, because they're making arguments about ambiguity, public policy, all these sorts of things. This is a gloss as to how courts look at the language here. That's why I mention it. And like I said earlier, it's an auto policy, but again, this is not a typical auto accident. It's not a rear-ender. It's not a bad left turn. It's not crossing the center line. This is very much an agricultural type of accident. This had to do, the accident occurred during harvesting of corn. Mr. Elmore was injured when he stepped into this unguarded auger. He wasn't injured when he got hit by a car or in a motor vehicle accident. Then the law is pretty clear on this. The duty-to-defend, I'm sorry, the duty-to-indemnify is nowhere near as broad as the duty-to-defend. So the question, again, is actual coverage. So when we get to the mechanical device exclusion, which I admit controls this case, Your Honor, the cases say, even when the Supreme Court says, only reasonable interpretations are considered, not creative possibilities. And I'm afraid we've got some creative possibilities argued here when we get to this definition of mechanical device. I mean, we both cited in our briefs, we both cited to the Merriam-Webster dictionary definition. The term is mechanical device. Just because it's not defined in the policy doesn't automatically mean it's ambiguous. The question is, is it a reasonable interpretation or is it an unreasonable interpretation? In other words, is it reasonable to interpret this great auger as a mechanical device? I'm not that familiar with farming. I admit that. And I don't know if any of you justices are that familiar with farm equipment. But I will offer this. There's some photos of the exemplar equipment, if you want to look at it, in the records. They're at E54, E59, E60, and E61. So you can take a look at this thing. So the issue was, how does Webster's define mechanical? Relating to machinery or tools. How does Webster's define device? It includes a piece of equipment or a mechanism designed to serve a special purpose or perform a special function. Well, what does the plain, ordinary, and popular meaning of those terms suggest when you look at this auger? Is it a mechanical item? Is it related to machinery or tools? Also, is it produced or operated by a machine or a tool? Well, I think it's reasonable to say it's related to machinery or tools. It's a specific piece of farm equipment designed to move grain from one level to another level. And that's exactly what was happening here. Is it a device? Well, it's a piece of equipment designed to serve a special purpose or perform a special function. I mean, that's all this thing does. Again, it's designed to a specific function for use on the farm to move grain. Is there any requirement, most importantly, is there any requirement in the Webster definition that it has to be sort of independently powered or have its own power source? That's not required. I mean, there's no requirement of that in either the definition of mechanical or the definition of device. I mean, that argument was made. Well, it's not independently powered, so it's got to be ambiguous. You know, that's not a requirement in either of those terms. So I would suggest to me that a reasonable definition for the grain auger is it is indeed a mechanical device. I think Judge Lally interpreted that correctly. If you use the plain, ordinary, and popular meaning of mechanical device and you look at the auger, you understand how it was being used, it's definitely a mechanical device here. What about the public policy argument that was made? Okay. And that's something that I want to mention. I mean, if we accept your definition, do you agree that Illinois law requires permissive users to be covered in a complete operation of a farm in an auto policy? No, not in all instances, Judge, no. I disagree. What does that mean, in all instances? What's the caveat? Well, for example, in Progressive v. Liberty Mutual, that was a permissive use. Just so we're clear on this, if I could just back up just a second, Judge, I will answer your question. Okay. I never really understood how this sort of permissive use argument came up. Just so we understand each other, okay, the guy that was injured was Kent Elmore. Okay. He's the guy that was hurt. He was a permissive user of the truck. But the guy that was sued is Sheldon Elmore. Okay. He's not a permissive user. He's the named insurer. So the issue here is liability coverage for Sheldon Elmore, not liability coverage for Kent Elmore. Who was Sheldon Elmore? He's the father of Kent. He's the contractual. We're talking about permissive users in the nature of third-party beneficiaries, aren't we, or not? No. Not really, no. Permissive means with permission? Right, but what we're talking about is liability coverage, and the issue is whether there's going to be liability coverage for Sheldon Elmore. He's the guy that was sued. It's not liability coverage for the son who was injured, the injured man who was injured. What's the doctrine of permissive use under the statute 7-317? Right, permissive users of a car, of an automobile. For an insurer? I'm sorry, what? Is a permissive, so we have, what is your interpretation of 7-317 as it relates to an insurance contract between two parties? Okay. For a motor vehicle policy, a permissive user is entitled to liability coverage, U.M. and U.I.M. coverage. The same as if the named insured was driving the car. Oh, yes, absolutely. So the permissive user under 7-317, as you just said, is entitled to all the benefits by statute of a contract between State Farm and the named insured. Yes. So is it true that 7-317 creates a kind of third-party beneficiary status for the user of the truck, in this case, between two policy people, State Farm and the father? Do you follow what I'm asking? That's one way, I suppose you could sort of look at it that way, because that's what the statute. How does the statute not say that? Well, if you have an exclusion that excludes both the permissive user and the owner, you're voting according to Illinois Supreme Court. No, I'm not there yet. I'm just asking preliminarily, forgetting the exclusion for a moment, because that goes to a different issue. But you would agree with me that your argument is I sued Sheldon. Right. Not the young man who got injured. Yeah. But the young man that got injured, he is the permissive user and the third-party beneficiary of this contract under 7-317, yes? I wouldn't call it a third-party beneficiary. As a practical matter, it is, but by statute, yeah, right, okay, yes. Okay, so that's what I'm asking is, I know who you sued, but this is all about the coverage for this young man, right? No, no, absolutely not. This is coverage for Sheldon. That's right. The case we filed is a liability claim against him. You're right, you're right. There's no permissive use issue in this case. I'll do respect to you, Your Honor. There's not, because he, the permissive user, he's the guy that got hurt. The question is, is there coverage for the named insurer? And that's because he's making a liability claim against Sheldon. Let me try to explain this better because I'm not doing a good job. Let's say if Kent, the son, was out driving the truck somewhere and he went through a red light or something and he hit somebody, he would be a permissive user entitled to liability coverage on the truck. Okay, you just said he would be entitled to liability coverage. Because he's a permissive user and he's driving the truck. The owner. Okay, I apologize. You're supposed to be very careful. Here's my, here's my, here's my. You're supposed to be very careful. I know, I know. Let's just say father or son. Okay, son, son, the injured son. Okay. If the son was driving the truck down the street, he goes through a red light, unfortunately he hit somebody. That injured, that hit somebody, that injured third party sues son. Son is entitled to liability coverage because he's a permissive user. Okay, stop. Now, if State Farm wanted to deny coverage for whatever reason, let's say it was DUI, State Farm would sue Sheldon. Because Sheldon is the named owner on the policy in a DEC action, right? No. No? No. You would sue the son? Not the father? If State Farm wanted to deny coverage, the guy that needs the coverage is the son because he's the guy getting sued by the injured third party. If the father isn't involved, he's not involved in that dispute. Well, he's the contractual owner, so that's my question. So if you wanted to deny coverage under the policy and you wanted, State Farm wanted to file a DEC action on the son's activities in the red light thing you just described, State Farm would file the DEC action against the father, just as they've done here because the son has no contractual liability. You're interpreting a contract. The only way you can get that before the court, isn't it? By filing the DEC action against the father. Is that true or not true, Mr. Videsky? No. Sorry. Judge, I disagree, no. No, no, I'm just asking. Because the father isn't involved in that dispute. The son's a potential insured under the policy because he's a permissive user when he's driving it on the street and he hits somebody. So your answer would be, just so the tape is correct for my court, your answer would be that in the red light dispute, if State Farm wanted to invoke an exclusion or some, if State Farm needed a declaratory judgment action filed over the language of the policy, the DEC action would be against the son, not the father, even though the son was not the owner of the policy. Right. That's exactly right, yes. Okay. Just so you may be interested, the reason why we sued both Sheldon and both the father and the son here, because the father would potentially be over liability coverage. The son here was the injured person. So he has an interest in whether there's coverage. So that's why both of them were sued in this case. Okay. Should I get to the public policy? I'm sorry with all the procedural stuff. Whatever you want to do. Okay. Yeah. First of all, on the public policy issue, the Supreme Court is pretty clear here. Progressive versus Liberty Mutual is the controlling case. In that situation, you had mother, who was the name insured, allow her son to use the van to deliver pieces for his employer. The son hits a pedestrian. The pedestrian sues the son. Progressive files a DEC action. The Supreme Court says that does not violate the motor vehicle code requirement for permissive users, because, again, that son was a permissive user. The reason why it didn't violate the motor vehicle code is because the exclusion for food delivery applied equally to both the name insured and the permissive user. So the Progressive versus Liberty Mutual holding is if you have an exclusion and it applies equally to both the name insured and the permissive user, that exclusion is valid under Illinois law. And there was an argument that Liberty made. The other carriers said, well, that exclusion is not specifically authorized by the legislature. This food delivery exclusion, well, it's not in the vehicle code. It's not in the insurance code. How can this be valid? Well, the Supreme Court said, no, it doesn't have to be explicitly authorized by the legislature in either the motor vehicle code or the insurance code. That's not required. And that's the Progressive versus Liberty Mutual. And that's exactly what we have here, Judge. In this particular case, the liability coverage is found on the record C240 and 241. And it defines who is insured for liability coverage. There's four different classes. There's the name insured. There's the resident relatives. There's a permissive driver, which is number three. And number four, any other person or organization vicariously liable for the use of a vehicle by an insured as defined in one, two, or three above. So four different people or four individuals and potentially an entity, a corporation or partnership would be potential insurers for liability coverage. The exclusion at issue is the mechanical device exclusion. And that's at C277. There is no coverage for an insured. Again, that's in bold. So what that means is that's any insured. Because insured includes, when you go to liability coverage, insured means all four of those are potential insurers. The exclusion excludes everybody from coverage. It excludes the name insured. It excludes the resident relative. It excludes the permissive driver. And it excludes potentially a vicarious liability to a corporation or a partnership. All four are equally excluded by this mechanical device exclusion. So this device exclusion does not favor the name insured versus a permissive user. Okay? Everybody's excluded just like in the Progressive case, the food delivery exclusion. Both the name insured and permissive users are equally excluded. So that's allowed under the Illinois Supreme Court holding of Progressive. Counsel, what about this argument? I guess you're addressing it now. But we'll look at the policy that insured was already excluded. And by this provision, basically the intent is we're going to exclude the permissive user. That's what I understand their argument is. Yeah, that's based on page, it's at C242. That's an exclusion contained in the main body of the policy. This is known as the family member exclusion. Okay? What this is, and, you know, there's lots of cases on it, there's no coverage for an insured who intentionally causes injury. Okay. For bodily injury to you, resident relatives, and any other person who both resides primarily with an insured and who is related, blood marriage or adoption or a war. So what they're relying on is this family member exclusion. Okay. This applies when dad is driving son. Dad goes through the red light. Car hits him. Son sues dad. Or let's say it's the wife. Wife's driving with dad in the car. Wife goes through the red light. Boom. Accident. Wife sues husband. Okay. That excludes coverage for family members suing each other. Now, what that becomes is an uninsured motorist claim. That's what it becomes. The reason why this was inserted in policies is because of potential collusion. One family member sues another family member. Yeah, you know, she's hurt really bad. I mean, that was sort of the thinking behind this, behind this exclusion. Okay. This has absolutely nothing to do with this case. Okay. Absolutely nothing to do with the case. We don't have a situation where somebody's, it's even a part, there's no uninsured motorist claim. This has nothing to do with what happened in this particular situation. And what section is that against her? This is at C-242 in the record. It's an exclusion in the main body of the policy. This is called a family member exclusion. And, again, it's where you've got, you know, a family, obviously. I understand. Yeah. I just need a clarification. Thank you. So, you know, that's, I don't know. Anyway, getting back to, oh, okay. Well, I guess I won't. Thank you. Thank you. Rebecca? Yes. Picking up from where the person has left off, to say that the, he called it the family exclusion, but in reality it excluded all named insured, including you. So that would be the name insured. To say that that doesn't have anything to do with this is just false. I mean, you look at the, when you take this in conjunction with the mechanical device exclusion, it's clear that the goal of this, that particular exclusion, is to deny bodily injury coverage under the liability policy for a permissive user. And it's against the public policy abnominus clause. Like it says, it says it excludes coverage for bodily injury to you and the resident relatives, but those resident relatives have to live with the name insured. And when you look at that in connection with the insured covered by the mechanical device, so that bodily injury that they would sustain is already out. So to say that that doesn't apply, it doesn't have any kind of relevance here, is simply not the case. So how do you rebut his argument on progressive versus liquid and mutual? I know you touched on it in your opening, but he says it's clear that you're out. Well, if it were clear, we wouldn't be here, right, Your Honor? That's what I was always talking about. The reasoning in progressive was really the disparate treatment between insureds and permissive users. And I think here the goal of this exclusion is against the reasoning in progressive. It's against the reasoning in the Smith case, because it's designed to deny liability coverage for a permissive user. And that's really what it's about. I mean, when you look at this other exclusion, which they are taking a conjunction, but we're supposed to look at the policy as a whole when it's interpreting it. When you look at those two things together, it's the insureds are out. So really the only... Well, how is it disparate if it's excluding both the insured and the permissive user? Well, I think it's disparate because in reality it's targeting. I mean, it's targeting permissive users. That's the disparate treatment I see here, Your Honor, because it's about the liability for the injuries of the people who are using to help lower the load. So the analysis by the court in progressive was about disparate treatment. I think there is disparate treatment just because of that. The effect is really to target permissive users. And they're trying to say insured to meet within the definitions of cases like progressive and Smith. But when you really tear it apart, it's really designed to just apply to progressive users, Your Honor. And, you know, there is no... I think I mentioned there's no other case that directly talks about this mechanical domestic exclusion, but there are several cases which I provided. But one that's particularly helpful is the Parkway versus... It's a New Jersey case. It's 266 NJ Super 386. It's a 1993 case. In that case, the exclusion was nearly identical to the one here, although, as I was mentioning, the reference in the vehicle A and maybe a narrow interpretation allowed by the exclusion here is that it only applies when you're loading. Interestingly, here in the Parkway case, the exclusion just says the insured vehicle, which is what this policy could have done and didn't. So I think there's an import for the reference to the vehicle in subsection A. But in any event, the court there did find that the mechanical device exclusion was against the public policy that was set forth in that insurance code. All that was invalid against public policy of ominous cause because the exclusion was structured to expressly eliminate coverage for a particular type of activity, but the net effect was to deprive certain persons or entities from ominous coverage in certain situations. The court concluded that the exclusion refers to mechanical equipment that effectively serves to eliminate coverage for certain additional insureds during downloading operation. And that's exactly what's going on here. It's against the public policy of the state because they're supposed to be covered for permissive insureds, and that's the purpose of this particular exclusion is to deny coverage for permissive insured insurers. Any other questions? Thank you. Thank you, counsel. Both of you for your arguments. This court will take this matter under advisement and render a decision in due course.